UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARCO SANCHEZ,
        Plaintiff,

v.   05-1085

MIKE CIOLLI, et al.,
        Defendants.

### ORDER AND MEMORANDUM OPINION

Before the court is the defendants', Mike Ciolli, Jack Atherton, Ferdinand Samalio, Angel Ortiz, Dr. Dalmasi, Harris Hansen and Ted Walls' unopposed summary judgment motion [41].

### Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the court is to construe all
justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. See *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999).

Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local* 710, 153 F.3d 774, 777 (7th Cir.1998).  On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.2003) (internal quotation omitted).  Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.) (internal quotation omitted), cert. denied, 126 S.Ct. 746 (2005).

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There is no is sue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.*" Anderson,* 477 U.S. at 249.

**Statement of Undisputed Facts**[1]

1. The plaintiff, Marco Sanchez ("plaintiff"), was at the time of the incidents alleged in the suit an inmate at the Federal Correctional Institute in Pekin, Illinois ("FCI Pekin"). The plaintiff filed a complaint against Mike Ciolli, Jack Atherton, Ferdinand Samalio, Angel Ortiz, Dr. Dalmasi, Harris Hansen and Ted Walls (hereinafter collectively referred to as "defendants"). The defendants at the time of the incidents alleged in the complaint were employed at FCI Pekin. (Complaint,¶4-10)
2. The plaintiff's complaint alleges that he suffered gunshot wounds in 1992 prior to his incarceration. (Complaint, ¶24) Further, the plaintiff states that he had surgery in 1994 and 1995 to remove bullet fragments that were causing him pain. (Complaint,¶25-26)
3. On March 7, 2003 plaintiff was injured while engaged in a sports activity. This aggravated his injury regarding the gunshot and resulted in pain to his back. (Complaint,¶28-29)
4. Plaintiff alleges that the defendants were deliberately indifferent to his back pain, including abdominal and groin pain. Plaintiff asserts that while he received treatment for his hip, back and spinal condition, the treatment he received did not relieve his pain which was due to "inadequate medications, treatment, testing and rehabilitation." (Complaint,¶32-33) Plaintiff does not state in his complaint what he believes the appropriate treatment should be.
5. Plaintiff limited his complaint to the treatment he received from February 7, 2003 through February 18, 2004. (Complaint, ¶10, 31)
6. Plaintiff concludes that each of the defendants was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. (Complaint,¶11, 36)
7. By letter dated July 19, 2006, the plaintiff notified the court that he was being deported to Mexico.
8. By letter dated August 24, 2006, the plaintiff notified the court that he was released from United States custody and was deported to Mexico. His new address is "E. Carranza 602 pte., Col. 10 de Mayo, Cd. Madero, Tamaulipas, C.P. 89450, Mexico."
9. On September 22, 2006, counsel for the defendants sent to the plaintiff a letter at his stated address informing him that in order to complete discovery in this matter, the plaintiff's deposition needed to be taken. Counsel asked the plaintiff to state

---

[1]Exhibits are attached to defendants' statement of undisputed facts [43] and plaintiff's complaint [9].

      what arrangements he intended to make for his deposition in light of his deportation. (Ex. A)

10. Counsel included with the September 22nd letter the United States' First Set of Requests for Admissions, Interrogatories and Requests for Production to Plaintiff (Exhibit B). Underlined on the first page are the words "under Rule 36, a matter is deemed admitted unless it is denied within 30 days after service of the requests." (Ex.B)
11. Plaintiff did not respond to the discovery requests. (Declaration of Counsel is attached as Exhibit D)
12. On November 3, 2006, counsel for the defendants sent another letter to the plaintiff again reminding him that he needed to respond immediately to the outstanding discovery requests and that Federal Rule 36 deemed the matters in the requests for admissions to be admitted unless they are denied within 30 days. The letter again sought to discover what arrangements the plaintiff intended to make for his deposition and how he intended to prosecute the case in light of his deportation. (Ex.C)
13. Again, the plaintiff failed to respond. (Ex.D)
14. By his failure to respond to the Requests for Admission, the plaintiff has admitted that, *inter alia*, the following facts are true:
    a. Plaintiff's allegations in his complaint are limited to the time period between March 7, 2003 and February 18, 2004. (Ex.B,¶4)
    b. Plaintiff has no medical evidence to support the allegations contained in his complaint. (Ex.B,¶5)
    c. Plaintiff does not have any written medical opinion by a qualified medical professional that supports his claims. (Ex.B,¶6)
    d. Although plaintiff complained of a sports related injury on March 7, 2003, he did not visit the medical unit until March 11, 2003 at which time his sole complaints were regarding a headache, foot fungus abdominal pain and hemorrhoids which were all properly treated by the medical staff. (Ex.B,¶38-41)
    e. Plaintiff was provided with a refill of his Naproxen whenever he reported a need for a refill to staff. (Ex.B,¶44)
    f. Although plaintiff went to the medical unit on numerous occasions between March 7, 2003 and February 18, 2004, he was never refused to be seen by staff and was always evaluated by staff for his complaints. (Ex.B,¶54)
    g. Plaintiff admitted that although he always received medical treatment from March 2003 through February of 2004, he disagreed with the treatment prescribed by the defendants. (Ex.B,¶56)
    h. Plaintiff admitted that he has no evidence to establish that any of the named defendants had been deliberately indifferent to his medical

       needs.  (Ex.B¶,8,16,24,28,31,34,37)

**Defendant Mike Ciolli**
15. Ciolli was employed by the Federal Bureau of Prisons and is now retired. He served as Warden at FCI Pekin from June 2, 2003 until June 7, 2004.  (Ex.E)
16. Plaintiff has admitted that Ciolli did not provide him with medical treatment. (Ex.B,p.4¶1)
17. Plaintiff admitted that Ciolli has no evidence that Ciolli was responsible for providing him medical treatment or that Ciolli influenced the manner in which the plaintiff was medically treated while he was at FCI Pekin.  (Ex.B,¶2-6)
18. Plaintiff admitted that he only named Ciolli as a defendant because Ciolli was the warden and was responsible for the operation of the prison.  (Ex.B,p.6,¶7)
19. Plaintiff admitted that he has no evidence that Ciolli was deliberately indifferent to his medical needs. (Ex.B,p.6¶8)

**Defendant Jack Atherton**
20. From August 2000 to October 2006, Atherton was employed as an Associate Warden at FCI Pekin. In that capacity he had general supervisory responsibility over the Health Services Department at FCI Pekin. (Ex.F)
21. Atherton did not make any clinical decisions regarding health care provided to inmates. He relied on clinical information provided by the medical staff in making his administrative decisions for the Health Services Unit. (Ex.F)
22. Atherton was not involved in the creation or implementation of national Bureau of Prison (BOP) policy. (Ex.F)
23. Although Atherton does know the plaintiff and he did not speak with him regarding his complaints regarding his health care. (Ex.F)
24. Atherton did not at any time deny or delay medical treatment for the plaintiff nor was he aware that any necessary treatment was delayed or denied to the plaintiff. (Ex.F)
25. Plaintiff admitted that he received no medical treatment from Atherton, that Atherton was not responsible for providing him with treatment and that he only named Atherton as a defendant because of his position as an associate warden at FCI Pekin. (Ex.B,¶9,10,13)
26. Plaintiff admitted that he had no evidence that Atherton was deliberately indifferent to his medical needs. (Ex.B,¶16)

**Defendant Ferdinand Samalio**
27. Samalio was employed as the Health Services Administrator (HSA) at FCI Pekin from September 1995 through June 2006. (Ex..G)
28. As HSA Samalio was responsible for the administrative functions of the Health Services Unit. Specifically, he was responsible for the housekeeping, sanitation, maintenance, personnel, budget, procurement and supply functions of the Health Services Unit. (Ex.G)

29. Although Samalio was a member of the Utilization Review Committee that reviewed the appropriateness of a variety of medical procedures for the inmates, he never withheld approval for a consultation or course of treatment that was recommended by a physician.(Ex.G)
30. Samalio was aware that Dr. Dalmasi recommended an MRI. This recommendation was reviewed and then approved by the Utilization Review Committee. The MRI was completed on December 31, 2003. (Ex.G)
31. Samalio was not responsible for providing clinical care and treatment to inmates at FCI Pekin. That responsibility lied with the Clinical Director who was not under Samalio's supervision. (Ex.G)
32. Samalio was not authorized to see patients in a clinical role. He never saw the plaintiff for purposes of medical care and never provided him with treatment. (Ex.G)
33. Plaintiff admitted that he did not receive any medical treatment from Samalio, nor was Samalio responsible for providing him with medical treatment. (Ex.B,¶17,18)
34. Plaintiff admitted that he named Samalio as a defendant only because he was Health Services Administrator who had responsibility for the functioning of the medical unit. (Ex.B,¶23)
35. Plaintiff admitted that he has no evidence to establish that Samalio was deliberately indifferent to his medical needs. (Ex.B,¶24)

**Defendant Angel Ortiz**
36. Defendant Angel Ortiz was employed as the Clinical Director at FCI Pekin from April 2002 until November 2003. He is a licensed physician. (Ex.H)
37. In April 2003, Ortiz prescribed Proxicam to the plaintiff to alleviate pain, tenderness and swelling in his leg and hip. (Ex.H)
38. On April 10, plaintiff complained of hip pain and on April 14, 2003, Ortiz examined him. Ortiz noted no swelling or numbness but noted that the range of motion appeared to be painful. Ortiz ordered an x-ray. (Ex.H )
39. Ortiz also prescribed Sulandec to relieve the pain, tenderness, inflammation and stiffness caused by the arthritis. (Ex.H)
40. Ortiz again examined the plaintiff in June 2003 when plaintiff complained of lower back pain. Ortiz determined that plaintiff had right lower extremity pain and history of lower back pain while lifting weights. Ortiz thought that plaintiff could possibly have an impingement on his sciatic nerve or a discogenic problem at his L5-S1 of his spine. (Ex.H)
41. Ortiz ordered an x-ray of the spine and prescribed Naproxen. (Ex.H)
42. Not all of plaintiff's complaints of pain could be objectively confirmed. Nvertheless, the pain and discomfort plaintiff reported was treated symptomatically with a variety of medications based upon the plaintiff's report of their effectiveness. The treatment provided was appropriate. (Ex.H)
43. Plaintiff admitted that he has no evidence to establish that Samalio was deliberately

indifferent to his medical needs. (Ex.B,P.11,¶28)

**Defendant Dr. Dalmasi**
44. Dalmasi was employed as the staff physician at FCI Pekin from June 2003 until December 2004. (Ex.I)
45. Dalmasi examined the plaintiff on August 26, 2003. Dalmasi refilled plaintiff's pain medication and ordered an MRI of his back.  The MRI was completed on December 31, 2003. Dalmasi met with the plaintiff on February 15, 2004 to discuss the results of the MRI. (Ex.I)
46. The MRI showed that there was some mild bulging of a disc located at L5-S1. Dalmasi directed Sanchez to complete various stretching exercises to improve the condition of his back. Dalmasi also instructed the plaintiff to use a hot water compress and to maintain his posture. (Ex.I)
47. In Dalmasi's opinion the only treatment that was appropriate for plaintiff's condition was symptomatic treatment for the pain and discomfort - and he received that treatment.  Dalmasi provided appropriate treatment to the plaintiff. (Ex.I )
48. Dalmasi also discontinued plaintiff's prescription for Naproxen and prescribed Tylenol for pain relief. (Ex.I)
49. Plaintiff admitted that he has no evidence to establish that Dalmasi was deliberately indifferent to his medical needs. (Ex.B,¶31)

**Defendant Hansen**
50. Defendant Otto Hansen was employed as a Physician's Assistant at FCI Pekin from June 2002 until November 2005. (Ex.J)
51. Between March 7, 2003 and February 18, 2004, Hansen saw the plaintiff clinically on numerous occasions. Plaintiff complained of right hip pain, headaches, foot and toenail fungus, abdominal pain, and hemorrhoids. (Ex.J)
52. On April 3, 2003, the plaintiff reported right hip pain.  Hansen wanted to rule out degenerative joint disease.  Hansen prescribed Proxicam for relief of pain. (Ex.J)
53. When plaintiff again complained of hip pain on April 10, 2003, Hansen referred him to the Clinical Director Dr. Ortiz. (Ex.J)
54. Thereafter, Hansen saw plaintiff on several occasions and prescribed sole inserts, the use of ice and heat, prescribed Tylenol, wrote a radiologic consultation, refilled his medication for lower back, conducted physical examinations. (Ex.J)
55. Hansen waw plaintiff on July 10, 2003 regarding plaintiff's back.  Hansen wrote a radiologic consult request for plaintiff's L-5 spine.  The x-ray was taken on July 18, 2003. (Ex.J)
56. Hansen saw the plaintiff again on August 3, 2003 for an evaluation.  Hansen assessed the plaintiff as having low back pain and sought to rule out herniation.  He prescribed Naprosyn, moist heat, and gave plaintiff a work restriction (no lifting over 20 pounds, no bending and no prolonged standing.)  (Ex.J)
57. On a number of occasions, he refilled the plaintiff's prescriptions.  (Ex.J )
58. At no time did the plaintiff deny or delay treatment to the plaintiff.  He was at no

time deliberately indifferent to the plaintiff's medical needs. (Ex.J)  Plaintiff admitted that Hansen was not deliberately indifferent to his medical needs. (Ex.B,¶34)

**Defendant Ted Walls**

59. Walls has been employed at FCI Pekin as a Registered Nurse from September 1995 until the present. (Ex.K)
60. Between March 7, 2003 and February 28, 2004, Walls had very little contact with the plaintiff other than to fill his prescriptions.  The one occasion during this time period that he examined the plaintiff, Walls reported his findings Dr. Ortiz who ordered treatment.  Walls followed all orders provided by the staff physicians. (Ex.K)
61. Walls, however, was familiar with plaintiff's medical chart noting that Dr. Ortiz had ordered the plaintiff to receive Proxicam, x-rays were pending, and he noted that Dr. Ortiz had made numerous orders for refilling plaintiff's prescription for Sulandec. (Ex.K)
62. In addition, plaintiff was given a full recreation restriction because of right hip pain.  He was examined on May 28, 2003, after the plaintiff complained of hip pain.  Walls' examination revealed that plaintiff was ambulatory with a slight limp, no deformity, no ecchymosis, no increased warmth, no edema and other alteration or evidence.  Sensation, function and blood supply were all normal. Walls' assessment was an alteration in comfort. (Ex.K )
63. At no time did Walls delay or deny the plaintiff medical treatment.  (Ex.K)
64. Plaintiff admitted that Walls was not deliberately indifferent to his medical needs. (Ex.B,¶37)

## Background

At the time of the incidents alleged in the suit the plaintiff, Marco Sanchez ("plaintiff"), was an inmate at the Federal Correctional Institute in Pekin, Illinois ("FCI Pekin").  The plaintiff filed a complaint against Mike Ciolli, Jack Atherton, Ferdinand Samalio, Angel Ortiz, Dr. Dalmasi, Harris Hansen and Ted Walls (hereinafter collectively referred to as "defendants").  The plaintiff claims the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights when they failed to adequately treat his back and hip pain which related to a gun shot injury he sustained prior to his incarceration.  The defendants were all employed at FCI Pekin at the time the plaintiff was incarcerated there.  Since the filing of his lawsuit, the plaintiff has been released from prison and deported to Mexico.  The plaintiff notified the Court of his change of address.

The defendants have served the plaintiff with discovery, including requests for admission, to which the plaintiff failed to respond.  In addition, the defendants twice notified the plaintiff that failure to respond to the requests for admission will be deemed an admission under the Rules.  Defendants also sent two letters to the plaintiff seeking to make arrangements with the plaintiff

for his deposition in light of his deportation. The plaintiff failed to respond. In support of their summary judgment motion, the defendants submit their declarations attesting to certain facts and all affirming they were not deliberately indifferent to the plaintiff's medical needs. Based upon the facts contained within the record, the defendants seek judgment in their favor.

## Discussion and Conclusion

The Eighth Amendment prohibits excessive bail, excessive fines, and "cruel and unusual punishments." In *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976), the Supreme Court held that the courts cannot find an Eighth Amendment violation in regard to prison medical care through an inadvertent failure to provide adequate medical care because such care cannot be said to constitute
"an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*. Complaints regarding the manner of treatment must rise above a mere disagreement between an inmate and medical personnel with respect to diagnosis and treatment. *Id*. at 107. An inadvertent failure to provide medical care or simple negligence does not amount to a constitutional violation. *Id.* at 106.

The Seventh Circuit has had held that even gross negligence does not rise to deliberate indifference. *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003). In the medical context, the court looks at the totality of an inmate's medical care to evaluate whether a doctor was deliberately indifferent to the inmate's medical needs. *Dunigan ex re. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996)(quoting *Youngberg v. Romeo*, 457 U.S. 307, 323, (1982) (footnotes omitted)). "Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." *Id.* at 261. A deliberate indifference claim contains both objective and subjective elements. *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir.1997). The deprivation suffered by the prisoner must be objectively sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities. *Gutierrez,* 111 F.3d at 1369 (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The subjective element requires that the prison official acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference culpability means two things: (1) a knowledge element satisfied by an official's actual knowledge of the serious medical need, and (2) a response element satisfied by reckless disregard for the known serious medical need, by inaction or woefully inadequate action. *Hudson v. McHugh*, 148 F.3d 859, 683 (7th Cir. 1998). Individual liability can only be based on a finding that the defendant caused the deprivation at issue. *Kelly v. Marion County*, 97 F.3d 902, 909 (7th Cir. 1996). A defendant will not be liable for a constitutional violation unless he was personally involved or acquiesced in the alleged

8

constitutional violation. *Id.; Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997).  There is no respondeat superior liability for supervisory officials due to the allegedly unconstitutional acts of their subordinates.  *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). Without a showing of direct responsibility of the improper action, liability will not lie against a supervisory official. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986).

The plaintiff failed to respond to the defendant's request for admissions under Rule 36 of the Federal Rules of Civil Procedure although he was given ample notice that his failure would constitute an admission of those requests.  Fed.R.Civ.P. 36(a) provides, in pertinent part,
> A party may serve upon any other party a written request for the admission, for purposes of the pending action only.... The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney....

Summary judgment is properly granted against the party who makes no response to a request to admit as to undisputed material facts supporting such a judgment. *United States v. 2204 Barbara Lane*, 960 F.2d 126, 129 (11th Cir.1992); *United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987); *see also, Jackson v. Health Care Serv. Corp.*, 1995 WL 506022, *2 (N.D.Ill. Aug.22, 1995) (holding that summary judgment was appropriate because the plaintiff had admitted one of the ultimate issues in the case in his response to the defendant's Rule 36 request to admit). The court must determine, however, whether summary judgment is appropriate under all the undisputed material facts. *See*, *Weinco, Inc. v. Kathan Associates, Inc.,* 965 F.2d 565, 568 (7th Cir.1992).

**Defendants Ciolli, Atherton and Samalio**
The defendant, Ciolli was the Warden at FCI Pekin at the time of plaintiff's incarceration. Atherton was the Associate Warden. Samalio was the Health Services Administrator.  None of these defendants provided medical treatment to the plaintiff.  All of them have administrative responsibilities for the operation of the Health Care Unit at FCI Pekin.  There is no evidence that any of these defendants was involved in any direct way with the plaintiff's health care.  The plaintiff admitted that each of these defendants was named as a defendant because of his responsibility for the operation of the Health Care Unit.  Further, the plaintiff admitted that he had no evidence that any of these defendants treated him or was deliberately indifferent to his medical needs.

A defendant may not be held liable simply because he was the supervisor of an employee who acted improperly. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995).  Rather, the plaintiff must show that each defendant participated in, directed or consented to the unconstitutional conduct. *Morfin v. City of East Chicago*, 349 F.3d 989 (7th Cir.2003).  As the United States District Court for the Northern District of Illinois reasoned:  Gora and Luther are prison

9

administrators, not licensed medical practitioners.  Lacking the requisite expertise, they must necessarily place their confidence in the reports of the prison doctors whenever an inmate disputes a medical opinion as to what treatment is necessary and proper.  The defendants here clearly deferred to the professional medical judgment of the doctors attending plaintiff with respect to
. . . the propriety of his treatment . . . Defendants' reliance upon the opinion of their medical staff as to the proper course of treatment for plaintiff is sufficient to insulate them from any liability under the Eighth Amendment.  *See, McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) and *McEachern v. Civiletti,* 502 F.Supp. 532, 534 (N.D.Ill.1980).  Similarly, in the instant case, the evidence establishes that Ciolli, Atherton and Samalio were prison administrators who had no responsibility for plaintiff's treatment nor did they administer care to the plaintiff.  None of them delayed or denied treatment to the plaintiff. They simply deferred to the treatment decisions made by the medical staff at the facility.  Based upon the evidence in the record, Ciolli, Atherton and Samalio are entitled to summary judgment.

 **Defendants Hansen, Wall, Dalmasi and Ortiz**
The defendants, Hansen, Wall, Dalmasi and Ortiz did provide medical treatment to the plaintiff, however, summary judgment is warranted in their favor, as well.  The plaintiff admitted and the record reflects that he was never denied treatment by any of the defendants.  The plaitniff admitted and the record reflects that he was evaluated by the medical staff and treatment was prescribed.  At no time did any of the defendants delay or deny him treatment.  At most, the plaintiff can only allege (and he has admitted) that while he received treatment for his complaints, he disagreed with the treatment provided.  The plaintiff, however, admitted he has no medical evidence to support his position and he does not have a medical background.  A mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference.  *Snipes v. DeTella*, 95 F.3d 586, *591 (7th Cir.1996).  Though he disagrees with that treatment, "[u]nder the Eighth Amendment, [a prisoner] is not entitled to demand specific care.  She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997).  "A prison is not required by the Eighth Amendment to give a prisoner medical care that is as good as he would receive if he were a free person, let alone an affluent free person.  He is entitled only to minimum care." *Maggert v. Hanks*, 131 F.3d 670, 671 (7th Cir. 1997)(internal citations omitted).

The record reflects that plaintiff's complaints of pain were properly evaluated. X-rays were taken, an MRI was prescribed and provided, lab tests were taken, all in a timely fashion.  It was discovered that he had a bulging disc and osteoarthritis in his hip.  According to the treating physician, the only appropriate treatment for the plaintiff's condition was symptomatic treatment for pain and discomfort, which plaintiff received.  The record reflects that in order to relieve the plaintiff's symptoms, the medical staff prescribed various pain relievers including Piroxicam, Tylenol, Motrin, Sundulac and Naproxen.  The evidence shows that these prescriptions were consistently refilled whenever plaintiff indicated a need and they were changed at various times to alleviate plaintiff's pain.  Further, plaintiff was informed on how to care for his back, using ice and heat and he was provided with stretching exercises.  He was also given a recreation restriction.  While plaintiff may disagree with the treatment that was provided, that is insufficient

to establish a deliberate indifference claim. Summary judgment is warranted in favor of the defendants, Hansen, Wall, Dalmasi and Ortiz.

**It is therefore ordered:**

1. Pursuant to Fed. R. Civ. Pro. Rule 56)c), the defendants' unopposed summary judgment motion [41] is granted.  The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff.
2. If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $255.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).
3. This lawsuit is closed in its entirety.

Enter this 21st  day of August 2007.

s\Harold A. Baker

_____
**Harold A. Baker
United States District Judge**